UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO: 3:09-CV-353-RJC-DCK

| | |
|---|---|
| STEPHAN C. HANNAH, and ) | |
| WINIFRED SUSAN HANNAH, ) | |
| ) | |
| Plaintiffs, ) | MEMORANDUM AND |
| v. ) | RECOMMENDATION |
| ) | |
| SCHINDLER ELEVATOR CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion To Remand" (Document No. 5) by Stephan C. Hannah and Winifred Susan Hannah ("Plaintiffs"). Schindler Elevator Corporation ("Defendant") opposes the motion. This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C.A. § 636(b), and this matter is ripe for review. Having carefully considered the record, including the pleadings and the parties' briefs (Document No. 5-7), the undersigned recommends that Plaintiffs' motion be **granted** and that this case be **remanded** to state court, based upon the following proposed findings of fact and conclusions of law:

### I. Background and Procedural History

While at work operating a pallet-jack at The Charlotte Observer ("The Observer"), Stephan Hannah was injured when a freight elevator door closed, causing him to fall and strike his head on the cement floor. He required seventeen stitches and suffered a severe concussion. He was off work for over a year while receiving treatment and therapy. Mr. Hannah received workers compensation benefits during this time. Mr. Hannah's physician indicates that Plaintiff is receiving ongoing treatment for cognitive problems and has a 12% permanent impairment. (Document No. 5, Ex. 3,

No. 27; Ex. 7-8).

On February 25, 2009, Plaintiffs filed this action against the Defendant in the Mecklenburg County, North Carolina, Superior Court. Plaintiffs' Complaint indicates that they seek to recover from Defendant an amount over $10,000 for personal injuries, lost wages, loss of consortium, and pain and suffering sustained as a result of the Defendant's negligence. The Observer filed separately in state court to enforce its subrogation rights under N.C.G.S. §97-10.2(c) to recover the money it paid regarding Mr. Hannah's work-related injury.

Defendant served written discovery upon The Observer, which provided written responses and documents on June 30, 2009. The responses disclosed that The Observer had paid $46,720.00 in lost wage payments, as of February 28, 2008. (Document No. 5, Ex. 5). Workers Compensation forms and other records provided to Defendant showed that Mr. Hannah was paid for the sixty four (64) weeks he was out of work for his head injury. The responses and documents served with them also showed a total of $27,597.00 in medical expenses paid as of that date. (*Id*. Ex. 3, No. 23; Ex. 4, No. 26; and Ex. 5).

According to Plaintiffs, this sum for lost wages paid by Worker's Compensation represented only a portion of Mr. Hannah's lost wages, as The Observer was required by law to pay only a percentage of his average weekly wage of $998.80. (Document No. 5-2, p. 3; Ex. 6). As Plaintiffs' Complaint sought recovery of total lost wages, the remaining percentage of lost wages would be $17,203.20, for a total lost wages claim of $63,923.20. Hence, the total documented losses as of June 30, 2009, amounted to $91,520.20 (consisting of $27,597.00 in medical expenses and $63,923.20 in total lost wages). Additionally, Plaintiffs' Complaint seeks damages for loss of earning capacity, disfigurement, future medical expenses, full compensation for his permanent

injuries, mental anguish, and pain and suffering.

The Observer voluntarily dismissed its separate filing on August 5, 2009. Based on the parties' diverse citizenship and the amount of damages at issue, Defendant removed the case to federal court on August 14, 2009.[1] The Plaintiffs timely sought remand on September 14, 2009. (Document No. 5).[2]

## II. Issues Before the Court

Plaintiffs assert that the Defendant's "Notice of Removal" was not timely filed and that this case should therefore be remanded to state court. Plaintiffs contend that Defendant was able to ascertain that this case was removable (based on the amount in controversy) on June 30, 2009, yet waited until forty-five days later on August 14, 2009 to file its "Notice of Removal."

Defendant responds that its "Notice of Removal" would be timely if the statutory thirty-day period runs from August 5, 2009, the date The Observer voluntarily dismissed its separate filing for recovery of amounts paid as "Worker's Compensation" benefits. Defendant contends that until August 5, 2009, The Observer's subrogation claim was separate from the recovery sought by Plaintiffs.

## III. Analysis

The removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). Simply put, the statute allows removal of a civil action if the

---

[1] 28 U.S.C. § 1332 grants federal jurisdiction in civil actions between citizens of different states where the matter in controversy exceeds $75,000.

[2] The record reflects that Plaintiffs complied with 28 U.S.C. § 1447, which required them to file their motion to remand within thirty (30) days of the filing of the notice of removal.

federal court would be authorized to hear the case if initially filed in federal court.

The statute governing procedures for removal, 28 U.S.C. § 1446, provides that a defendant generally must file a notice of removal within thirty days after receiving a copy of the initial pleading. 28 U.S.C. § 1446(b). However, the statute further provides in relevant part that if the Complaint does not provide grounds for removal on its face, "a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id*.; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 62 (1996).[3]

Discovery responses may constitute "other paper" from which it may first be ascertained that the case is one which is removable. *See Lovern v. General Motors Corporation*, 121 F.3d 160, 162-163 (4th Cir. 1997) (holding that documents provided in discovery could be considered in determining when the defendant first had notice of grounds for removal).[4] In *Lovern*, as in the present case, the discovery first demonstrated to the defendant that the case was removable. "[W]hen a complaint fails to allege the requisite amount in controversy upon which to base removal, it is appropriate to engage in discovery to determine the nature and extent of the damages being sought." *Hartman v. Conseco Senior Health Ins. Co.* 2008 WL 2557250, *2 (S.D.Ohio ). "A defendant may then appropriately rely on the information obtained during discovery to determine whether an action is removable." *Id*.

---

[3]Section 1446(b) also provides that in diversity cases, "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action."

[4]This applies when "the case stated by the initial pleading is not removable." 28 U.S.C.A. § 1446(b). The Complaint on its face merely specifies damages over $10,000.00.

The party seeking removal bears the burden of establishing federal jurisdiction. *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994); *Gwyn v. Wal-Mart Stores, Inc.*, 955 F.Supp. 44, 46, fn.3 (M.D.N.C.1996) ("a defendant must show by a preponderance of the evidence that the amount in controversy exceeds the federal jurisdictional minimum"). Courts must strictly construe removal jurisdiction and resolve all doubts in favor of remand. *Id.*; *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 297 (4th Cir. 2008) (noting "the long-standing tradition of strictly construing removal jurisdiction" and reiterating that "doubts about jurisdiction are resolved in favor of remand to state court"); *and see, e.g.*, *Bartnikowski v. NVR*, 307 Fed. Appx. 730, 2009 WL 106378 (4th Cir. (N.C.)). Courts routinely remand cases back to state court when a motion for removal is untimely. *See, e.g., Hemphill v. Safeway, Inc.,* 430 F.Supp.2d 517, 518 (D.Md. 2006); *Barton v. Insignia Mgmt. Group*, 5 F.Supp.2d 357, 358 (D.Md. 1998).

In the present case, the Defendant knew or should have known, based on the discovery responses served on June 30, 2009, that the amount in controversy in the present case exceeded the $75,000 jurisdictional requirement. The Defendant's contention that it first knew that this case was removable on August 5, 2009, is without merit. That date merely marks the day on which The Observer voluntarily dismissed its separate filing.[5] The Defendant argues that "[w]hat was once two separate lawsuits with two separate recoveries both below $75,000, becomes one unified lawsuit with a recovery in excess of $75,000." (Document No. 6, p. 7). Defendant mischaracterizes the effect of The Observer's subrogation claim.

---

[5] N.C.G.S. 97-10.2(h) provides that neither the employee or employer can make settlement with any third party without the written consent of the other unless: (1) the employer is made whole for all benefits paid or to be paid and the release with the third party is executed by the employee, or (2) the employee obtains and judgment or agrees to a settlement and application is made to the court for modification of the subrogation lien under §(j).

The Worker's Compensation Act governs the procedural mechanism for distributing any recovery. The provisions of N.C.G.S. §97-10.2 function to protect the subrogation interest of the lienholder, in this case, The Observer. The lien rights of The Observer as subrogee do not reduce the amount in controversy sought by Plaintiffs in the present lawsuit. In other words, there are not two separate awards of damages. Instead, The Observer would simply recoup a portion of any recovery by Plaintiffs based on the amount of previously paid benefits.[6]

The written discovery responses and documents provided to Defendant on June 30, 2009 disclosed that The Observer had made payments of $46,720.00 for lost wages (see Document No. 5, Ex. 5). The discovery also indicated $27,597.00 in medical expenses, paid as of February 28, 2008. (*Id*. Ex. 3, No. 23; Ex. 4, No. 26; and Ex. 5). As Plaintiffs' Complaint sought recovery of lost wages, the total lost wages claim would be $63,923.20, based on Mr. Hannah's average weekly wage of $998.80. (Document No. 5-2, p. 3; Ex. 6). Hence, the total documented losses revealed by discovery on June 30, 2009, reflected the ascertainable sum of $91,520.20.

Moreover, Plaintiffs' Complaint seeks additional damages for loss of earning capacity, disfigurement, future medical expenses, full compensation for his permanent injuries, mental anguish, and pain and suffering. Given the amount of lost wages and medical expenses (including the indication of ongoing treatment), these remaining claims should also have alerted the Defendant that the Plaintiff was seeking damages in excess of the jurisdictional minimum amount. *See, e.g., Praisler v. Ryder Integrated Logistics, Inc.*, 417 F.Supp.2d 917, 920 (N.D.Ohio 2006) (citing *Green v. Clark Refining & Mktg., Inc.*, 972 F.Supp. 423, 425 (E.D.Mich. 1997) (holding that a listing of "the nature of plaintiff's damages and relief requested as compensation for her injuries should have

---

[6] The diversity of the parties is not disputed here.

alerted defendants that plaintiff was seeking at least $75,000")).

**IT IS, THEREFORE, RECOMMENDED** that the Plaintiffs' "Motion To Remand" (Document No. 5) should be **GRANTED** and this case should be **REMANDED** to state court.

### IV.  Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de novo* review by the District Court, *Snyder*, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: November 16, 2009

David C. Keesler
United States Magistrate Judge