UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09cv353-RJC-DCK

| | |
|---|---|
| STEPHAN C. HANNAH and<br>WINIFRED SUSAN HANNAH,<br><br>Plaintiffs,<br><br>v.<br><br>SCHINDLER ELEVATOR<br>CORPORATION,<br><br>Defendant. | ORDER |

**THIS MATTER** is before the Court on plaintiff's[1] motion for remand (Doc. No. 5). The Court has reviewed the parties' briefs, the Magistrate Judge's Memorandum and Recommendation ("M&R"), and defendant's objections. The matter is now ripe for determination.

**I. BACKGROUND**

Defendant Schindler Elevator Corporation ("Schindler") does not object to the proposed findings of fact in the M&R, and this Court adopts and reiterates those findings of fact as follows:

> While at work operating a pallet-jack at The Charlotte Observer ("The Observer"), Stephan Hannah was injured when a freight elevator door closed, causing him to fall and strike his head on the cement floor. He required seventeen stitches and suffered a severe concussion. He was off work for over a year while receiving treatment and therapy. Mr. Hannah received workers compensation benefits during this time. Mr. Hannah's physician indicates that Plaintiff is receiving ongoing treatment for cognitive problems and has a 12% permanent impairment.
> On February 25, 2009, Plaintiff[] filed this action against the Defendant in the Mecklenburg County, North Carolina, Superior Court. Plaintiff['s] Complaint

---

[1] While this action has two plaintiffs, the issues addressed in this Order are more clearly articulated by use of the singular term plaintiff, referring to Stephan C. Hannah.

indicates that [he seeks] to recover from Defendant an amount over $10,000 for personal injuries, lost wages, loss of consortium, and pain and suffering sustained as a result of the Defendant's negligence. The Observer [had] filed separately in state court to enforce its subrogation rights under N.C.G.S. § 97-10.2(c) to recover the money it paid regarding Mr. Hannah's work-related injury.

Defendant served written discovery upon The Observer, which provided written responses and documents on June 30, 2009. The responses disclosed that The Observer had paid $46, 720.00 in lost wage payments, as of February 28, 2008. Workers Compensation forms and other records provided to Defendant showed that Mr. Hannah was paid for the sixty four (64) weeks he was out of work for his head injury. The responses and documents served with them also showed a total of $27, 597.00 in medical expenses paid as of that date.

According to Plaintiff[], this sum for lost wages paid by Worker's Compensation represented only a portion of Mr. Hannah's lost wages, as The Observer was required by law to pay only a percentage of his average weekly wage of $998.80. As Plaintiff['s] Complaint sought recovery of total lost wages, the remaining percentage of lost wages would be $17,203.20, for a total lost wages claim of $63,923.20. Hence, the total documented losses as of June 30, 2009, amounted to $91,520.20 (consisting of $27,597.00 in medical expenses and $63,923.20 in total lost wages). Additionally, Plaintiff['s] Complaint seeks damages for loss of earning capacity, disfigurement, future medical expenses, full compensation for his permanent injuries, mental anguish, and pain and suffering.

The Observer voluntarily dismissed its separate filing on August 5, 2009. Based on the parties' diverse citizenship and the amount of damages at issue, Defendant removed the case to federal court on August 14, 2009. The Plaintiff[] timely sought remand on September 14, 2009.

(Doc. No. 8 at 1-3) (citations omitted).

The Court adds for clarity that The Observer filed suit against Schindler in state court on December 30, 2008, nearly two years and ten months after the alleged injury, and nearly two months prior to the plaintiff's initiation of his state-court action. For further clarity, the Court will refer to the instant action as the "Hannah suit" and the dismissed state-court action as the "Observer suit."

## II. LEGAL STANDARD

The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection

2

is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Similarly, de novo review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." Id. Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. Thomas v. Arn, 474 U.S. 140, 149 (1985); Camby, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the M&R.

## III. DISCUSSION

The M&R recommends remanding the action to state court for failure to timely remove the action (within thirty (30) days from the receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. 28 U.S.C. § 1446(b)). Defendant lodges two objections to the M&R. First, it argues that, contrary to the Magistrate Judge's determination, the Hannah suit did not become removable to federal court until the Observer suit was dismissed on August 5, 2009. Second, defendant argues that the M&R inappropriately concluded "other paper" – for purposes of removal of the Hannah suit – includes discovery responses from the Observer suit.

The Court notes the difficulty of this legal issue at the outset. As plaintiff argues and the M&R makes clear, N.C.G.S. § 97-10.2 merely "function[s] to protect the subrogation interest of the lienholder, in this case, The Observer." (Doc. No. 8 at 6). As a result, the lien rights sought by The Observer as subrogee in the Observer suit do not reduce the amount in controversy sought by plaintiff

3

in the present case. The Observor, as subrogee, appropriately filed the Observer suit asserting its claims on December 30, 2008. Subsequently, rather than being properly joined to the employer subrogee's Observer suit under § 97-10.2(d), plaintiff (the employee subrogor) was later allowed to file and maintain a separate lawsuit. Further complicating matters, emails between counsel for plaintiff and defendant show plaintiff refused to consent to consolidate the Hannah suit with the Observer suit, but that he was willing to consolidate the cases for discovery purposes only.

The Observer and defendant made a joint motion for joinder of a necessary party on June 29, 2009, seeking to add plaintiff as a party to the Observer suit. To this Court's knowledge, no action was taken on that motion. The next day, on June 30, defendant received discovery responses from The Observer in the Observer suit indicating that the amount in controversy of that case was $74, 313. Defendant further knew that the workers' compensation payments constituted only a percentage of plaintiff's lost wages claim. The question then is whether defendant, on June 30, received an "other paper" pursuant to 28 U.S.C. § 1446(b) from which it could be ascertained that the Hannah case was removable.

### A. Whether Discovery in the Observer Case Triggered the 30-day Removal Clock in the Hannah Case

A plain reading of N.C.G.S. § 97-10.2(d) makes clear that it was mandatory for the Superior Court to make the plaintiff a party to the Observer suit. The statute states, "If the employee or his personal representative shall refuse to cooperate with the employer by being the party plaintiff, then the action shall be brought in the name of the employer and the employee or his personal representative shall be made a party plaintiff or party defendant by order of court." § 97-10.2(d). But, because plaintiff was never joined as a necessary party in the Observer suit, there remained two separate state-

4

court causes of action until the Observer suit was dismissed on August 5, 2009.

Plaintiff argues that interrogatory responses in the Observer suit should be considered "other papers" under 28 U.S.C. § 1446(b), from which defendant could have ascertained that the Hannah suit was removable. Plaintiff cites no case holding that discovery from a separate case can constitute "other paper" under § 1446(b). Instead, plaintiff argues that § 1446(b) does not explicitly require that "other paper" be generated in the same case that a defendant seeks to remove.

Two main facts superficially support plaintiff's argument. First, the Observer suit and the Hannah suit were closely intertwined. The same factual occurrence engendered both cases, and both cases involved the same defendant, overlapping damages, and largely the same legal issues. Yet importantly, even though the two suits are intertwined, plaintiff took affirmative steps to keep them separate by refusing to join the Observer suit. Two circuit courts have considered similarity of actions in holding that a judicial order from a separate case constituted an "order" for § 1446(b) purposes. See Green v. R.J. Reynolds Tobbacco Co. et al., 274 F.3d 263, 267-68 (5th Cir. 2001) (same defendant and similar facts and legal conclusion); Doe v. American Red Cross, 14 F.3d 196, 202-03 (3d Cir. 1993) (same defendant, similar facts, and controlling separate order expressly authorizing removal). But these cases do not control this Court's inquiry. As discussed below, while the Green and Doe cases may offer some support for plaintiff's position, they stand in contrast to Fourth Circuit precedent more pertinent to the issue at hand. See Lovern v. General Motors Corporation, 121 F.3d 160, 162 (4th Cir. 1997). Further, neither Green nor Doe considered whether discovery from a closely related – albeit separately filed – case could be considered "other paper" under § 1446(b). Additionally, both the Green and Doe courts acknowledged these holdings were quite narrow. See Green, 274 F.3d at 268 ("[T]he *Sanchez* opinion, under these very narrow circumstances, was an "order" for purposes of §

5

1446(b)"); Doe, 14 F.3d at 202 ("We take an extremely confined view of this case and our holding is equally narrow.").

Plaintiff's position is also marginally supported by evidence that plaintiff offered to consolidate discovery in the Hannah suit with discovery in the Observer suit. In a May 4, 2009, email from counsel for plaintiff to counsel for defendant, plaintiff's counsel stated the plaintiff "remain[s] willing to consolidate for purposes of discovery," but not for other purposes. (Doc. No. 6-1 at 22). If the Hannah and Observer suits had in fact been consolidated for discovery purposes on or near this date, then on June 30, 2009, the discovery response in the Observer suit could be imputed to the amount-in-controversy calculation in the Hannah suit. There is nothing, however, in the record indicating the Hannah and Observer suits were actually consolidated for discovery purposes.

While the Hannah and Observer suits were closely related and plaintiff offered to consolidate the cases for discovery purposes, they remained two separate causes of action. The Fourth Circuit in Lovern v. General Motors Corporation stated that a district court may "rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal . . ." 121 F.3d at 162 (emphasis added). The Lovern court held that answers to interrogatories in the same case triggered the 30-day removal clock, but the court stopped short of deciding whether a police report alone could constitute an "other paper" for purposes of § 1446(b). Id. at 163. Still, the opinion's language indicates that documents triggering the removal clock under § 1446(b) must be documents exchanged in the relevant case by those parties.

The Lovern guidance is further supported by a basic canon of statutory construction, ejusdem generis. Under this rule, "when a statute sets out a series of specific items ending with a general term, that general term is confined to covering subjects comparable to the specifics it follows." Hall Street

Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S. Ct. 1396, 1404 (2008). Here, § 1446(b) lists amended pleading, motion, order, and other paper. The general term "other paper" is limited by the three terms preceding it, which implicitly refer only to documents generated in the same proceeding. Indeed, the great majority of cases to consider the general issue have held that "other paper" for § 1446(b) purposes must have been generated in the same lawsuit a plaintiff seeks to have remanded. See, e.g. Disher v. Citigroup Global Markets, Inc., 486 F. Supp. 2d 790, 802 n.5 (S.D. Ill. 2007) ("[A] document generated in a case separate from a case as to which removal is sought generally is not an 'order or other paper' authorizing removal within the meaning of 28 U.S.C. § 1446(b).") (citing Dudley v. Putnam Inv. Funds, 472 F. Supp. 2d 1102, 1110 (S.D. Ill. 2007)); Morsani v. Major League Baseball, 79 F. Supp. 2d 1331, 1333-34 (M.D. Fl. 1999) ("The plain language of [§ 1446(b)] . . . implies the occurrence of an event within the proceeding itself . . ."); Chen v. China Airlines, 713 F. Supp. 1322 (N.D. Cal. 1989) ("The paper-in-the-case rule appears to have been applied almost without exception to section 1446(b)."); Coman v. Int'l Playtex, Inc., 713 F. Supp. 1324, 1327 n.6 (N.D. Cal 1989) ("In earlier cases considering what constitutes a 'paper' for purposes of triggering removal jurisdiction, nearly all courts have required that the 'other paper' be generated within the case.") (holding the federal Judicial Improvement and Access to Justice Act, expanding diversity jurisdiction, was not an "other paper" under § 1446); see also 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3731 (4th ed.) ("[D]ocuments not generated within the state litigation generally are not recognized as 'other papers,' receipt of which can start a 30-day removal period under Section 1446(b).").

In his reply brief, plaintiff attempts to minimize the language in Lovern as merely "dicta." But district courts within a circuit should treat that circuit's dicta as "presumptively correct." Gee v. Lucky

7

Realty Homes, Inc., 210 F. Supp. 2d 732, 735 (D. Md. 2002). "Only when a district court is convinced that its court of appeals' dictum is clearly incorrect should the dictum be disregarded." Branch ex rel. Branch v. Coca-Cola Bottling Co., 83 F. Supp. 2d 631, 635 (D.S.C. 2000) (Shedd, J.). The Court finds Lovern's dictum legally correct.

Plaintiff also cites the Fourth Circuit's opinion in Yarnevic v. Brink's, Inc. in support of remand. 102 F.3d 753, 755 (4th Cir. 1996). However, while Yarnevic held that information need not be communicated in a formal manner to constitute an "other paper," it did not hold that a paper from a separate cause of action constitutes an "other paper" for § 1446(b) purposes. Rather, Yarnevic considered whether the plaintiff's memorandum of law, a document originating in that same case, constituted a motion or other paper for § 1446 purposes. Id. at 755. The Fourth Circuit held that it did. Id.

Without a court order joining plaintiff as a party to the Observer action under § 97-10.2, defendant had no mechanism by which it could remove the Hannah suit to federal court. Two closely related but separate actions existed at that time, and neither case on its face independently met the required amount in controversy under 28 U.S.C. § 1332(a). Plaintiff, having refused to consolidate the Hannah suit with the Observer suit, cannot now seek to foreclose federal jurisdiction by painting the two cases as one. Defendant should not be denied a federal forum simply because the Superior Court failed to add plaintiff as a party to the Observer action. Nor should federal jurisdiction be foreclosed merely because plaintiff decided to file a separate civil action after The Observer had already initiated litigation on the matter, which § 97-10 does not envision. Had the Superior Court added the plaintiff to the Observer suit in compliance with § 97-10, defendant presumably would have timely removed the case once the claims were joined and the action met the amount in controversy

8

requirement.

The interrogatory responses provided by The Observer in the Observer suit on June 30, 2009, were not an "other paper" for purposes of the Hannah suit. They were served in response to interrogatories in the Observer suit only. The case caption on the interrogatory responses named only The Observer as plaintiff, as The Observer was the only plaintiff that was party to that action. See (Doc. No. 1-1 at 8). The Court will not hold defendant to a standard that would require it to speculate as to whether the damages sought in a separately filed action by a subrogor should be aggregated with the damages sought in a later action by a subrogee for purposes of federal jurisdiction over the subrogee's civil action. Thus, the 30-day removal clock did not begin running on June 30, 2009.

**B.      Whether the Hannah Suit Was Ever Ripe for Removal**

Defendant argues that on August 5, 2009, the Hannah suit became ripe for removal, because on that date the Observer suit was dismissed. The Court fails to see how the Observer suit's dismissal had any bearing on the damages calculation of the Hannah suit for removal purposes. Defendant points to no further discovery from the Hannah suit indicating anything different from what the initial pleadings in the Hannah suit indicated – that damages were in excess of $10,000. Thus on August 5, 2009, there was still no amended pleading, motion, order, or other paper generated in the Hannah suit from which defendant could have ascertained that the amount in controversy of the Hannah suit exceeded $75,000. Defendant's August 14, 2009, removal petition was therefore premature.

The Court then faces the question whether the case should be remanded. Throughout the briefing on this motion for remand, both plaintiff and defendant have assumed the amount in controversy of the current case exceeds $75,000. Plaintiff does not argue that the amount in controversy is less than $75,000. Rather, plaintiff argues in his memorandum in support of the motion

for remand that defendant should have ascertained on June 30, 2009, that the amount in controversy exceeded $75,000. See (Doc. No. 5-1 at 4). This scenario presents an awkward procedural context, since removal was premature, but a motion or "other paper" generated in the already-removed Hannah suit provided the information from which it could be first ascertained that the case was removable.

The Court need not, however, remand the case or require defendant to file a supplemental notice of removal. The Fourth Circuit faced a similarly unique posture in Yarnevic, from which the Court draws instruction. 102 F.3d 753, 755 (4th Cir. 1996). In Yarnevic, the only document from which it could be ascertained that the case was removable was the plaintiff's memorandum of law in support of a motion for remand. Id. at 754. As the court explained, "a supplemental notice of removal, would, if granted, have the effect of removing a case that has already been removed." Id. (quoting Nolan v. Boeing Co., 715 F. Supp. 152, 153 n.1 (E.D. La. 1989)). While it would have been more procedurally appropriate for defendant to have filed a supplemental petition for removal within thirty days of plaintiff's September 14, 2009 memorandum in support of its motion for remand, the Court holds that it was not necessary. See id. (holding supplemental petition unnecessary under similar circumstances).

## III. CONCLUSION

Until plaintiff's September 14, 2009 memorandum, the Hannah suit generated no pleading, motion, order, or other paper from which it could be ascertained that the case was removable. Thus the 30-day removal clock did not begin running until that date. Further, since the case had already been removed when the memorandum was filed, the Court will not remand the action even though defendant did not file a supplemental petition for removal.

**IT IS, THEREFORE, ORDERED** that plaintiff's motion for remand (Doc. No. 5) is **DENIED**.

Signed: January 8, 2010

Robert J. Conrad, Jr.
Chief United States District Judge